M. J. SLAUGHTER, plaintiff in error, *vs.* BRYAN CULPEPPER *et al.*, defendants in error.

Under sections 1753 and 1759, of the Revised Code of this State, which provide that a widow is entitled to dower in all lands of which her husband died seized and possessed, and that no lien created by the husband during his life shall in any manner interfere with the same, a mortgage made by the husband, for the purchase-money, cotemporaneously with the deed to him by the vendor, passing, as it does, "no title," and being only a lien created by the husband, is no bar to her right of dower, nor is her dower subject to the same.

A widow is, in this State, entitled to dower in lands bargained by the husband, in his lifetime, to a third person, the purchase-money remaining unpaid and the title to the land being retained by the husband, in himself, until his death. LOCHRANE, Chief Justice, dissents.

Dower. Before J. E. BOWER, Judge, *pro hac vice.* Mitchell Superior Court. May, 1871.

Judge Strozier being interested in this cause, an attorney was, by consent, made Judge *pro hac vice.* The case made for his decision, was this: In December, 1861, at the executor's sale of David Culpepper, William Slaughter purchased a plantation on credit, took a deed from said executor for said land, and simultaneously gave his notes for the purchase-money, and a mortgage on said land to secure them. In 1862, Slaughter agreed to sell Cochran said land for a note on one Green, indorsed by Cochran, and gave Cochran a bond conditioned to make him or his assigns title to said land when said Green's note was paid. Under this contract, Cochran took possession of said land, and was in possession of it, as his own, when Slaughter died, in 1863. Green's note was not paid at maturity. It was sued to judgment, a part of it was paid and is held by a Receiver of said Court, as part of Cochran's estate, but claimed by creditors of Cochran and Slaughter. Culpepper's executor foreclosed said Slaughter's mortgage, and had the *fi. fa.*, founded upon the rule absolute, levied upon said land, and the land was sold thereunder by the sheriff to Culpepper, who sold it to Baggs

& Collins, and they went into possession of it.   Pending the rule to foreclose said mortgage, Slaughter's widow applied for dower in said land.   The sole question was, was she dowable in said land ?   The Court held that she was not and that is assigned as error.

HINES & HOBBS; VASON & DAVIS; G. J. WRIGHT, for plaintiff in error.

LYON, DeGRAFFENRIED & IRVIN, for defendant.

McCAY, Judge.

Were this Court authorized to determine the question made in this record, upon its conceptions of what ought to be the law, we should not hesitate to decide for the defendant in error.   It is manifestly unjust, that the widow of the vender of land, should have her dower in it until the purchase-money is paid.   And yet, both in England and in this State, if the title has passed to the vendee, the rule is well established that the right of dower attaches, even to the exclusion of the vendor's lien.   And this, after solemn argument, was the decision of this Court, in the case of *Clements vs. Bostwick*, 38 Georgia Reports, 1.   That the vendor does not, reduce his lien to writing, in the shape of a mortgage, but suffers it to rest upon the right given him by the law, can make no difference as to the justice of the case.   It is just as *inequitable* to give the wife dower in land that is not paid for, and which has resting upon it the vendor's equitable mortgage, as to give her dower in land which has resting upon it a formal mortgage, put into writing for the purchase-money.

But it is not for Courts to set up their notions of justice, against the legislative will.   Our statute, Code, section 1753, expressly provides that the wife shall have dower in all lands of which her husband died seized.   And section 1759, provides that *no lien* created by the husband during his lifetime

Slaughter *vs.* Culpepper *et al.*

shall, in any manner, interfere with the wife's right of dower. The only question that can be asked, at the death of the husband, is, was he seized and possessed of the land? Was the title in him? If so, the wife, by the positive provisions of the statute, is entitled to dower. No lien created by the husband can interfere. In England, and in most of the States, it is held that, if a deed and a mortgage for the purchase-money are executed cotemporaneously, no such *seizin* of the land passes to the husband, as makes the wife endowable. See 1 Scribner on Dower, and the cases cited. But it will be found that these cases all turn on the well settled rule, that, at law, a mortgage is a title—that the *seizin* is in the mortgagee—and it follows that, as the *seizin* of the husband is only *transitory* in the case put, the right of dower does not attach. It is admitted, that if the title be in the husband, but for a day, the *seizin* is complete, and the right of dower attaches.

The English cases turn wholly upon the technical legal proposition that a mortgage is a title and not, at law, a mere lien. Our Code, section 1944, declares expressly the contrary. It says a mortgage in this State is only a lien, and conveys *no title*. The argument is irresistible that, as a mortgage, in Georgia, conveys no title, the English doctrine that the right of dower does not attach because the *seizin* of the husband is only transitory, cannot have, in this State, any force. The rule that the wife's dower yields to a mortgage for the purchase-money made cotemporaneously with the deed, dependent, as it is, solely upon the technical rule that a mortgage is a title, wholly fails in this State when, by the express statute, this character of a mortgage is directly repudiated, and the contrary declared to be the law. Some of the American cases deny the right of dower, not only on the idea that the mortgage is a title, but upon the further ground that there is an equity in favor of the vendor which overrides the right of the wife. (Though, in this State, the vendor's lien is abolished. Code, 1978.) Indeed, it would seem that

the Courts have felt that the mere technical idea of a mortgage being a title was an unsatisfactory ground to put it upon. And they have, many of them, made it turn upon the idea that the mortgage being for the purchase-money, the vendee took the land with the incumbrance upon it. These cases recognise the right of the wife to dower, but they declare the dower subject to the mortgage, as it would be to any other lien upon it lawfully when the husband got his title. This is, without doubt, a more satisfactory ground to rest upon than the English idea of a want of *seizin* in the husband; since, *in fact*, even in England, a mortgage is not a title, whatever it may be in theory. But, our Code will not allow us even to deny the dower on this idea. True, the mortgage is a lien, which went upon the land at the moment the title was acquired, and in a very true sense it may be said that the husband took the land with the lien upon it. For this reason, our Court, in *Scott, Carhart & Company vs. Warren & Spicer*, 21 Georgia, 408, decided that a mortgage for the purchase-money, executed cotemporaneously with the deed, had a preference to judgments then existing against the vendee. And, were there nothing in our law on the subject of dower, except the simple statement that the wife is entitled to dower in all lands of which her husband died seized, we should be inclined to hold that the wife took subject to the mortgage, as she would to any other incumbrance on the land existing at the time the title of the husband accrued. But section 1759 of the Code provides that *no lien* created by the husband shall in any manner interfere with the dower. Was this mortgage lien created by the husband? Without doubt it was. How, then, can we give it, in any manner, preference to the dower? What right have we to add an exception to the statute; especially when it contains such positive language, how can we give a preference? If we say that the husband may, by creating a lien for the purchase-money cotemporaneously with the deed, do we not, at least, inone case, allow a lien created by the husband in some manner to interfere with the wife's right of dower?

Slaughter *vs.* Culpepper *et al.*

If men will be careless enough to *convey title* to lands, with the purchase-money unpaid, they take the risk, not only having the land sold, but in Georgia, they have no lien, and even if they take a lien in writing, they stand, as do other persons who take liens: they yield to the wife's right of dower. We do not think the definition of "dower," in the Code, was intended to change the rights of the parties. By the words, "seized and possessed," is simply meant, "has the title." Any other construction would deprive the wife of dower in wild lands. The title to these lands was, at his death, in Slaughter, and his *mere* obligation to another to make a title, on certain conditions which have not been performed, does not, in our opinion, alter the wife's right. What equitable rights might arise in a case where a portion of the condition was performed, we do not decide, as there is no such fact in this case.

Judgment reversed.

WARNER, Judge, concurred, but delivered no opinion.

LOCHRANE, Chief Justice, dissenting.

In the discussion of the legal question presented by the record, I shall confine myself to the sole proposition, whether *dower*, under our law, attaches to property, the deed to which, and mortgage back to secure the purchase-money, was one transaction. Code, section 1753, provides: "Dower is the right of the wife to an estate for life, in one-third of the lands, etc., of which the husband died seized and possessed." The argument is, that the right of dower attaches over every lien created by the husband, and, inasmuch as he was *seized* of the fee to the lands in question, and under our law, Code, section 1944, "a mortgage in this State is only a security for a debt, and passes no title," that the wife is entitled to her dower; for the mortgage was only a lien created by the husband, and though it was executed at the time of the deed, and for the purpose of securing the purchase-money, still

holds no higher *status* than a lien. And under the Code, section 1759, which is as follows: "No lien created by the husband in his lifetime," etc., "shall, in any manner, interfere with her right to dower," it is held that the mortgage for the purchase-money shall not interfere, but is subordinate to the legal estate of dower of the wife therein.

I am constrained to differ with the judgment of the Court upon this question, and at the outset remark, that, in my judgment, the naked declarations of the Code must not be literally construed, but taken with their history in the light of previous legislation and adjudication upon the subject-matter. And this mode of construction is not only reasonable and proper, but is supported by the decisions of this Court. In the case of *Phillips vs. Morrison & Solomon,* January Term, 1871, in construing the section of the Code releasing sureties, (section 2121,) this Court held the meaning of the Code to apply to principles of justice drawn from the common law, and adjudication of Courts thereon. Now, in construing the section, 1753, giving the right of dower, why shall we not apply to it the principle decided by this Court, in 21 Georgia Reports, 408, as to the effect of transitory *seizin* in the purchaser, who, at the same instant, encumbers, by mortgage for the purchase-money, the lands? It will be remembered, that when this decision was delivered, a mortgage in this State created only a lien, and not an estate, in the thing mortgaged. Judge Lumpkin says: "The bargainer sells the land to the bargainee, on condition that he pays the price at the stipulated time, and whether this contract, *which is one,* is contained in the same instrument as it well may be, or in distinct instruments executed at the same time, can make no possible difference. Taking the whole transaction together, it is a conditional sale, and the title never did vest in the mortgagor, except encumbered with the debt, to-wit: the purchase-money." "Suppose that Wade, after receiving the deed from Barnes, had refused to execute the mortgage, could not the contract have been re-

Slaughter *vs.* Culpepper *et al.*

scinded? Unquestionably. Then it took both the instruments to consummate the agreement. It is like a feoffment and defeasance at common law, which is deemed but one conveyance: 2 Bla. Com., 327; Co. Lit., 236, *b*. Where two instruments are executed at the same time, between the same parties, relative to the same subject-matter, they are to be taken in connection, as forming together the several parts of one agreement: 1 John. Cas., 95. Where a deed is given by the vendor of an estate, who takes back a mortgage to secure the purchase-money, at the same time executes a deed, the deed and mortgage are to be considered as part of the same contract, as taking effect at the same instant, and as constituting but one act, in the same manner as a deed of defeasance forms, with the principal deed, to which it refers, but one contract, although it be by a distinct and separate instrument: Holbrook *vs.* Finney, 4 Massachusett Reports, 569."

The decision of the Court was not predicated upon the common law, but upon the nature of the transaction; for a mortgage was only then, as it is now, a security for a debt, and passed no title to the land. And we find the same principle sustained by nearly all the American cases. In Maybury *vs.* Bryan *et al.*, this question was before the Court, Judge McLean delivering the opinion. In that case the mortgage was delivered at the same instant with the delivery of the deed, and it was held that, upon such a *seizin*, dower did not attach. The doctrine recognized is to the effect, where a man has the *seizin* of an estate beneficially for his own use, the widow should be endowed, but where a mortgage is given by the grantee at the same time with the conveyance there is no such beneficial *seizin* in him as will give the right to dower. The same doctrine may be found in Cunningham *vs.* Knight, 1 Barbour, 399, where it is held that an instantaneous *seizin* by the husband is not sufficient for a right of dower to attach in the wife; as where the husband takes a conveyance of land, and at the same time gives

back a mortgage to secure the purchase-money. In Gammon *vs.* Freeman, 1 Redfield, 243, we find the same principle; in Boynton *vs.* Sawer, 25 Alabama, 497, the principle is laid down, "when the husband purchases and mortgages for the price the mortgage overrides dower."

This principle we find recognized as the doctrine of the various States, and it stands without an exception.  If it be said that these decisions follow the common law, then, under the doctrine applicable to the rights of the wife to dower in the lands in which her husband was seized during the coverture, the transitory *seizin* by which, in the first instance, the party was invested could not be, by his own act, without his wife uniting therein, divested to the exclusion of her rights of dower. If the rule under the law where she had to unite with her husband in the relinquishment of her dower prevented the transitory *seizin,* in such a case from vesting her with a dowable interest, why should such *seizin* under contract of incumbrance, by which contract the estate itself was procured, be held to be dowable? The same reason would apply in both cases.  I am not unaware of the great liberality with which Courts have been disposed to treat applications for dower, and the principle laid down by the Master of the Rolls that it is not only a legal but a moral right that she should have sustenance out of the estate of her husband.  And the policy of the law has been founded upon this acknowledged right.  But is it justice, or equity founded either upon legal or moral considerations, that the property of another party, who may have a children of his own, shall be taken for the support and maintenance of another man's wife?  Was it the intention of the Code of Georgia so to change the policy of the law and its acknowledged justice and equity as to appropriate the property which, at the time of the purchase and by the terms of the purchase, was incumbered with a debt due for the purchase-money, and which, by the decision of this Court in 21 Georgia Reports, became virtually a conditional sale; that is to say, a sale in-

cumbered with a condition for the payment of the purchase-money? The liens which dower displaces are liens created by the husband. But this, taking the deed and conveyance of mortgage together, is not a lien, but something higher. It is not a thing growing out of the contract, but it is the contract itself, and to dissever it and mutilate it is to rescind the whole agreement and set it aside. Suppose A and B were to exchange deeds to land at common law, by so strict a construction, except their wives united in relinquishment they would be entitled to dower, both of them in both estates. But there was a principle that the common law attached, by which a condition was implied prohibiting the enjoyment of dower in both estates. And in the case at bar, in the purchase of this estate, there was a condition expressed at the time of the contract, and as a part of the contract, that the purchase-money should be paid and the property stand pledged until it was paid. The lien enacted by the husband contemplated by the statutes means the lien created upon something which belonged to the party creating it, and not something by which the estate itself was obtained.

In the language of Judge Lumpkin, the title never did vest " except incumbered with the debt. When a man purchases land from another, and one of the terms of the purchase is that the land shall be a security for the payment of the purchase-money, all that comes to belong to the purchaser is such an interest in the land as is consistent with the liability in the land to be sold for the payment of the purchase-money." The rights under the mortgage and the deed vested *simultaneously*, and it was just as necessary to render the deed good that the mortgage should have been made as it was to make the mortgage good that the deed should have been made. The contract of sale was inchoate until both were perfected, and the interest the purchaser obtained was an interest upon condition, and could neither be diminished nor enlarged by the fact of his death. Nor can the widow claim any greater estate vested in her husband than he himself acquired under the terms of his contract.